# Luck *versus* Luck.

1. In an action of assumpsit by one tenant in common against his co-tenant to recover the value of the crops raised by the latter upon the common property, evidence as to the amount paid by the defendant for lime put upon the land necessary to raise the crops, is admissible as a set-off.

2. Whether an action of assumpsit will lie by one tenant in common against his co-tenant to recover the value of the crops raised by the latter upon the common property, in other words for the use and occupation of the land, is not determined: three of the justices are of the opinion that it will, and three are of the contrary opinion. TRUNKEY, J., absent.

May 6th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Snyder county :* Of July Term 1886, No. 43.

This was an action of assumpsit by Israel Lincoln Luck against Mary E. Luck, executrix of the last will and testament of Jeremiah Luck, deceased.

The plaintiff in his *narr* set out in addition to the common counts : For that, whereas, the said Jeremiah Luck in his lifetime, to wit, on the day of August, A. D. 1884, at Penn township, in the county aforesaid, was indebted to the plaintiff in $2,000, being the value of the crops and products, or aggregate annual value (due the plaintiff), of all that certain tract of land in said township and county which Israel Luck by his last will and testament devised to the said Jeremiah Luck deceased, and the plaintiff, the said Jeremiah Luck deceased, having kept and appropriated to himself in his lifetime, to wit, before August, 1884, all the crops, products and annual value of said tract of land, to wit, for about twelve years, the one moiety of which crops, etc., was and is due the plaintiff, which the defendant promised to pay to the plaintiff in the above suit.

Plea, non-assumpsit, non-assumpsit *infra sex annos*, payment, set-off with leave.

Israel Luck, the father of Jeremiah Luck and the grandfather of Israel Lincoln Luck, who was the son of Jeremiah Luck, died seised, *inter alia*, of 43 acres of land situate in Penn Township, Snyder County, Pennsylvania, in November, 1873.

On the 5th of September, 1870, by his will duly probated he devised to Jeremiah Luck and Israel Lincoln Luck said 43 acres of land, valued by him at $3,010, as tenants in common. He devised to his daughter Elizabeth a tract of land valued by him at $2,320, and to his daughter Margaret a tract of land

[Luck v. Luck.]

valued by him at $2,100. He directed in his will that the said Jeremiah Luck and Israel Lincoln Luck, his son, "shall pay unto my said wife Elizabeth annually the sum of $60.19, that being the annual interest of one third of $3,010; the said Margaret Luck shall pay unto my said wife Elizabeth annually the sum of $42, that being the annual interest of one third of $2,100; the said Elizabeth Maurer shall pay unto my said wife Elizabeth annually the sum of $46.39, that being the annual interest of one third of $2,320. All the above annual payments of interest shall be made as long as my said wife shall live; and in order to equalize said property amongst my said children the said Jeremiah Luck and Israel Lincoln Luck, his son, shall pay in manner following, to wit: To my daughter Margaret $75 annually, commencing payments one year after my decease, without interest, until due, continuing said payments until the sum of $376.67 shall be paid; and my said son, Jeremiah Luck, and Israel Lincoln Luck, his son, shall pay unto my daughter Elizabeth $40 annually, also commencing paying one year after my decease, without interest, until done; continuing said payments until he shall have paid her the sum of $156.67."

On May 11th, 1872, he made a codicil to his will, which was duly probated, which directed, *inter alia*, that "the bequest made in my said last will to my grandson, Israel Lincoln Luck, shall be, and the same is hereby, altered, changed and amended, so that in case the said Israel Lincoln Luck should die without issue or heirs of his body, then, and in that case, all that was bequeathed to said Israel Lincoln Luck in said will shall vest and descend to all the children then living of my daughter Elizabeth Maurer."

Israel Lincoln Luck was born in February, 1864; he is unmarried, and never had issue or heirs. On April 1st, 1874, Jeremiah Luck took possession of the land and continued to farm the same, receiving all the crops until August, 1884, when he died. He paid the legacies as directed by the will.

From 1874 to 1880, Israel Lincoln Luck lived with his father on this land, but he had no control over it, nor did he assist in farming it. Since 1880 he has been living with friends and strangers, and earning his own living. His mother died when he was five or six years old, Mary E. Luck, the widow of Jeremiah Luck, being his step-mother. Jeremiah Luck made his last will and testament, in which he gave his entire estate to Mary E. Luck and his son, Ossie D. Luck, the only child by his second wife. He appointed Mary E. Luck sole executrix of his will. Jeremiah Luck having received all the crops and proceeds of this land from 1874 to 1884, both years included, this suit was brought by Israel Lincoln

3 AMERMAN—17

Luck to recover his share of the same. The defendant was permitted to set off the plaintiff's share of all taxes paid by Jeremiah Luck, which it was shown he paid, and also to set off the plaintiff's share of some new fence which Jeremiah Luck built.

On the trial, before BUCHER, P. J., defendant's counsel proposed to prove that Jeremiah Luck, in a proper manner, limed this land to keep it in proper condition, from the time these parties moved on this property, April, 1874, down to the time of his death, and that it was necessary to put the lime on that was put on by him. This for the purpose of showing a set-off to the plaintiff's claim.

Plaintiff's counsel objects to this evidence. First: Unless it be shown that the lime was put upon this land within six years prior to the bringing of this action. Second: That as between tenants in common of arable land no recovery can be had for improvements put upon the common property of the tenants in common. Also objects that this evidence is incompetent unless it is first shown that the lime, which is proposed to be proved was put on here, was necessary.

By the Court: We sustain the objection on the authority of Beatty *v.* Bordwell, 10 Norris, 440, and reject the evidence. To which the defendant excepts and bill sealed. (Twelfth assignment of error.)

The defendant presented, *inter alia*, the following points :

That unless the jury believe from the evidence in the cause that there was an express contract or agreement on the part of Jeremiah Luck to pay Israel Lincoln Luck rent for the use and occupancy of the land, or to give him a part or portion of the grain and other produce raised on the land, then the plaintiff is not entitled to recover.

Answer. Refused. (First assignment of error.)

That even if Israel Lincoln Luck left said land and permitted Jeremiah Luck to use and occupy this land, still he is not entitled to recover in this action unless he has satisfied the jury from the evidence that Jeremiah Luck made an express contract with the plaintiff to pay him rent for the use and occupancy thereof.

Answer. Refused. (Second assignment of error.)

That Jeremiah Luck and Israel Lincoln Luck are, if anything, tenants in common of this land, and that before the plaintiff can recover in this suit he must show that Jeremiah Luck expressly agreed and contracted with him to pay him rent, or give him a part of the grain and other produce raised thereon, for the use and occupancy of the land.

Answer. Refused. (Third assignment of error.)

In the general charge the Court instructed the jury, *inter alia*, as follows :

The plaintiff, who was a co-tenant with Jeremiah Luck, deceased, sues the defendant, his executrix, in assumpsit in order to recover the value of the crops raised upon the land held in common, which his co-tenant received in excess of his share. The declaration is not for use and occupation. If it had been, the contention of the defendant that the action would not lie upon mere proof of the occupation, although the possession was permissive on the part of the plaintiff, would be sound. In such case the action would not lie in the absence of a proof of an express promise on the part of Jeremiah Luck, the co-tenant, to pay. Such an express promise has not been shown—but such is not the case before us. The plaintiff is seeking to recover the crops which grew upon the lands held in common, which his co-tenant in his lifetime received in excess of his share.

The Supreme Court decided in Gillis *v.* McKenney, 6 W. & S., 78, that assumpsit may be maintained by one tenant in common against his co-tenant to recover a share of the rent upon proof that the whole was received by the defendant. It is true in this case there was an express promise on the part of the defendant to pay, but the Court says that the plaintiff was entitled to maintain assumpsit upon proof that the defendant had taken all the proceeds of the land and sold it. This was followed by Borell's Administrator *v.* Borell, 9 Casey, 492, in which it was distinctly held that one tenant in common could maintain assumpsit against his co-tenant to recover a share of the profits, upon proof that the whole was received by the defendant. In such case the law raises an implied promise to pay over the plaintiff's share. It is insisted that these cases have been overthrown by the decisions in Kline *v.* Jacobs and wife, 18 P. F. S., 57, and Noss *v.* Gould, 15 W. N. C., 188 ; but we do not think so. In the former the action was for use and occupation, and the Court held that the tenant in common could not recover against his fellow for the use and occupation of the common property without proof of an express contract to pay rent. An action for use and occupation depends not upon privity of estate, but upon privity of contract. The Court does not notice the cases of Borell's Administrator *v.* Borell, and Gillis *v.* McKenney, just referred to, and we do not feel at liberty to regard them as overruled. We best discharge our duty by leaving the responsibility of doing that to the Supreme Court. We are mindful that Mr. Justice THAYER, in Noss *v.* Gould, holds that they are overruled by Kline *v.* Jacobs, but he does not say that the Supreme Court have plainly declared that such was their intentions. Whilst we concede his great abil-

ity as a Judge, yet we decline to follow.his ruling on account
of the serious consequence that would ensue if his views of
the law be correct.    He there holds that in a case like the one
in hand where one co-tenant passively permits his fellow to
have the exclusive possession of the lands held in common and
to receive all the rents, issues and profits, that he cannot
recover in the absence of an express promise to pay, neither
by action of assumpsit, nor account render under the statute of
4 Anne, c. 16, nor by bill in equity, not in any other way
whatsoever.    It is a maxim of the law that it affords a remedy
for every wrong.    We therefore prefer the doctrine enunciated
by the Supreme Court in the cases which are claimed to be
overthrown, and hold that they are still the law and that
assumpsit will lie.    This remedy is far preferable to the now
almost obsolete action of account render, and superior to any
that can be invoked, unless it be by bill in equity.    In assump-
sit a jury can settle all the equities between the parties and do
ample and complete justice.    We therefore charge you that
this action can be maintained, and that the plaintiff cannot
be defeated upon the ground that he has misconceived his
action, if you find from the evidence that the plaintiff was the
co-tenant with Jeremiah Luck of the land upon which the
crops in dispute grew, and that he received more than his
share.    In such case the plaintiff can recover whatever the
defendant received over and beyond his share.    It is undenia-
ble that the will of Jeremiah Luck, deceased, given in evidence
by the plaintiff, constitutes him a co-tenant with Jeremiah
Luck, of the lands therein devised to them as tenants in com-
mon.    The contention of the plaintiff is that Jeremiah Luck
entered upon these lands devised to them as tenants in com-
mon in April 1874, and farmed the same and raised crops
thereon until his death, in August, 1884, and that during this
entire period of about ten years he appropriated to his own
use all the crops, and that the plaintiff received none of them.
How this is will be for you to find from the evidence.

Verdict for the plaintiff for $1058,85 and judgment thereon,
whereupon the defendant took this writ assigning for error
*inter alia,* the rejection of the evidence and the refusal of his
points as above set out.

*Charles Hower,* for plaintiff in error.—It is an admitted fact,
that no express contract to pay rent has been shown in this
case, and the Court in their charge to the jury say that "such
an express promise has not been shown."    In Kline *v.* Jacobs,
18 P. F. S., 58, SHARSWOOD, J., says that "At common law
nor under any statute could assumpsit for use and occupation
be maintained upon the mere occupation, though it might be

shown to be permissive. Each tenant has an equal right to the possession of the whole, and without an express contract to pay rent, account was the only remedy under the statute of Anne." While this action could be sustained as against the strangers, SHARSWOOD J. says, in Kline v. Jacobs, *supra*, on page 59: "It is clear that this is not so between tenants in common." Again he says, "But here, unless the plaintiff had succeeded in satisfying the jury that there was an express contract to pay rent she had no title to recover whatever.

The evidence in this case, if it even goes that far, shows nothing more than a mere permissive occupation, and if that is so, he the plaintiff "cannot maintain assumpsit for mere use and occupation except upon an express promise of his co-tenant, and that neither trespass nor assumpsit will lie for mere permissive occupation:" Norris v. Gould, 15 W. N. C., 187; Chambers v. Chambers, 14 American Decisions, 587 and notes on pages 586–7; Griffith v. Willing, 3 Binn., 317; Steffen v. Hartzell, 5 Wharton, 450; Irvin v. Hanlin, 10 S. & R., 219; Anderson v. Grebble, 1 Ash., 136.

The defendant proposed to prove that he put lime on this land, and that it was necessary to do so in order to keep the land in proper condition for agricultural purposes. This to reduce the plaintiff's claim, if he has any. The Court rejected the evidence.

It is true that one tenant in common cannot put new and valuable improvements upon the common property, and make his co-tenants pay his share of them, for by doing this he might improve his co-tenant out of his property. But this is not the rule as to ordinary and necessary repairs so as to keep the property in a tenantable condition. Liming land of this kind is absolutely necessary in order to keep it in a condition proper for agricultural purposes. All this we proposed to show, but the Court rejected our evidence, which we believe to be error: Anderson v. Greble, 1 Ashmead, 136; Dech's Appeal, 7 P. F. S., 472.

*Charles P. Ulrich*, for defendant in error.—At common law one tenant in common could maintain an action of account against his co-tenant only where he had expressly constituted him his bailiff of his part. The statute of 4 Anne, chap. 16, sec. 27, Roberts Dig. 48, allows the action of account render without proof of an express contract. Of course account was the only remedy expressly given under the statute of Anne, which allows the action against the co-tenant "as bailiff for receiving more than comes to his just share or proportion," and these words were held to apply only where he has received more than his just share from others, as for instance if one tenant in

common should rent the common property to a third party and receive all the rent: Henderson *v.* Eason, 9 Eng. Law and Eq. Rep., 337. If this English decision shall be considered law in Pennsylvania, even account under the statute could not be maintained in ordinary cases, and surely not in the case in hand. The plaintiff in error insists on this narrow construction of the statute of Anne, when he cites Norris *v.* Gould, 15 W. N. C., 187, yet in another part of his argument he suggests that the proper remedy would be by bill in equity. It is however clear that if this statute can be so construed as to permit a bill in equity, it may likewise be construed to permit assumpsit. Hence if the position of the plaintiff in error be maintained that assumpsit don't lie, then indeed would the plaintiff below be without a remedy, and so would every tenant in common where his co-tenant first happens to get into possession. Such a conclusion, if possible, must be avoided. Even partition would afford no relief, but would only prevent the continuance of such legalized deprivation of what is justly due. But in the case in hand even partition cannot be obtained, for Israel Lincoln Luck has more than a life estate, he has a conditional fee, for which the Partition Acts make no provision. The result of all this would be that Mary E. Luck, the step-mother of Israel Lincoln Luck, and the devisee of Jeremiah Luck, deceased, who is now in the exclusive possession of this land, might continue in the same and appropriate the crops as her husband did in his lifetime without any liability whatever to Israel Lincoln Luck. Or in other words, Israel Lincoln Luck's estate would be worthless to him, and the bounty of his grandfather would be defeated. To all this the argument of the plaintiff in error leads. All this strengthens our position, that the contention of the plaintiff in error should not be sustained, unless the necessity be imperative.

But it is far from imperative. Upon the other hand, whatever may have been the common law, we think it has been modified so that full justice may be done in a case like this. This Court has decided in two cases that assumpsit does lie, under facts exactly similar to those in this case. Upon the authority of these cases this suit was brought. They are Gillis *v.* McKinney, 6 W & S. 78, and Borrell's Administrator *v.* Borrell, 33 Pa., 492. In Brigham *v.* Eveleth, 9 Mass., 538, it is held that where two were joint owners of a machine, and one used it for a considerable period, that assumpsit lay for its use. So in Jones *v.* Harraden, 9 Mass., 540, (in note) where one part owner in possession of a ship made a profit by it, held that the other could recover his part in assumpsit. Again in Fanning *v.* Chadwick, 3 Pick., 420, the part owner of

[Luck *v.* Luck.]

a ship was permitted to recover for a share of the profits made while it was in the occupancy of the other part owner. Again in 9 Pick., 34, it is decided that if one tenant in common of a wood cut off and sell a portion, his co-tenant can maintain assumpsit for money had and received. We are unable to see a difference between the profits made out of a machine, or a ship, or a wood by one of several joint owners, or tenants in common, and those made out of a farm. Again, assumpsit by one co-tenant against another to recover his share of the rents and profits received by the latter, has been sustained in several of the other states on the grounds, 1. That, whenever account can be maintained, *indebitatus assumpsit* may also; and 2. That, the statute of Anne, *supra*, being remedial, ought to receive a liberal construction: Moses *v.* Ross, 41 Maine, 360; Miller *v.* Miller, 7 Pick., 136; Munroe *v.* Luke, 1 Metcalf, 464; Shephard *v.* Richards, 2 Gray, 424; Dickinson *v.* Williams, 11 Cush., 260; Buch *v.* Spofford, 40 Maine, 328; Gowen *v.* Shaw, 40 Maine, 58; Dyer *v.* Wilbur, 48 Maine, 287; Ficquit *v.* Allison, 12 Mich., 329.

The 12th assignment of error complains of the action of the Court below in rejecting the testimony as to some lime put upon this land by Jeremiah Luck. Here there was no agreement on the part of Israel Lincoln Luck to pay his proportion of any lime put upon the common property by Jeremiah Luck. The rule undoubtedly is that repairs, which are absolutely necessary to the enjoyment of the property, if made by one tenant in common, may be claimed in part against a co-tenant. But this rule does not apply to arable land: Beatty *v.* Bordwell, 91 Pa., 441. The set-off claimed was small, and considering the liberality as to set-offs, with which the defendant below was treated, she should not complain. Nor is there any hardship in this. Jeremiah Luck was "perfectly acquainted with his rights," or had the means of becoming so, and he put on this lime without asking the consent of his co-tenant: Crest *v.* Jack, 3 Watts, 239; Gregg *v.* Patterson, 9 W. &. S., 209. The language of AGNEW J., in Glidden *v.* Strupler, 52 Pa., 405, is also applicable in this case on this point. It is as follows: "In this case, added to the equal source of knowledge, there is the further element of legal incapacity, a knowledge of which is always imputed, and in this case an admitted fact, which takes away all claims to equity."

Mr. Justice PAXSON delivered the opinion of the Court, October 4th, 1886.

This was an action of assumpsit by one tenant in common against his co-tenant to recover the value of the crops raised

by the latter upon the common property; in other words, for the use and occupation of the land. I am of opinion that the action will not lie under the facts of this case, in which opinion two of my colleagues concur. Three of them, however, are of a contrary opinion, and as our brother TRUNKEY did not hear the case we are unable to pass upon the first three assignments of error. We all agree, however, in reversing the case upon the twelfth assignment. The defendant's counsel offered to show the amount of lime the defendant had put upon the land, and that it was necessary to put it on in order to raise the crops. The learned judge excluded this evidence upon the authority of Beatty *v.* Bordwell, 91 Pa. St., 440. This was error. That case does not rule this. This action was assumpit for the value of the crops. The most that the plaintiff could recover would be the value of the crops after a proper allowance for expenses. The lime, or other fertilizer, put upon the land for the purpose of growing the crop was as much a part of the expenses as was the labor of planting or harvesting it. This is too plain to need elaboration. We notice nothing in the remaining assignments which requires discussion.

Judgment reversed and a *venire facias de novo* awarded.